UNITED STATES of America

v.

**Beryle JOHNSTON.**

No. 93–130–CR–ORL–22C.

United States District Court,
M.D. Florida,
Orlando Division.

Jan. 29, 1998.

A.B. Phillips, Asst. U.S. Attorney, Orlando, FL, for U.S.

James M. Russ, Orlando, FL, James C. Cripe, Papillion, NE, Robert Egan, Jaeger & Blankner, Orlando, FL, Brien P. O'Brien, Dakota City, NE, Eugene Hillman, McCor-

mack, Cooney, Hillman & Elder, Omaha, NE, Terrence L. Michael, Baird, Holm, McEachen, Pedeersen, Hamman & Strashiem, Omaha, NE, Robert Sackett, Milford, IA, James Etschorn, Orlando, FL, Jeffrey R. Jontz, Orlando, FL.

### ORDER

GEORGE C. YOUNG, Senior District Judge.

On October 24, 1997, Magistrate Judge James G. Glazebrook issued a Report and Recommendation (Dkt.369). Therein, he recommended that this Court grant the United States' "Motion to Set Aside as Fraudulent Conveyance of Forfeited Property or in the Alternative a Determination That K & J[] Limited Liability Company is the Alter Ego of the Defendant Beryle Johnston" (Dkt.332), filed May 6, 1997. As a basis for that recommendation, Judge Glazebrook determined that the conveyance at issue was fraudulent, and had resulted from a bogus loan transaction engineered for the purpose of defeating the United States' interest in forfeited property. Judge Glazebrook found that the purported loan had never been made; it merely existed on paper.

On November 3, 1997, Kathleen H. Johnston filed a document entitled "Objection to Report and Recommendation" (Dkt.370). The Court determines that, as detailed below, the various arguments raised in that document are without merit.

The objections asserted in paragraphs 1 and 2 relate to inconsequential matters.

Paragraph 3 states: "There are two contradictory sentences in the middle paragraph [of page 7 of the Report and Recommendation]. It first states that a trustee's deed was recorded on August 10, then states that a trustee's deed was transferred on August 6." However, there is nothing contradictory about these findings in the Report and Recommendation. The trustee's deed (Govt.Ex.8) plainly reflects that it was executed on August 6, 1995, and recorded on August 10, 1995.

The hearsay objection raised in paragraph 4 is without merit. Additionally, even if the alleged hearsay was excluded, Judge Glazebrook's ultimate conclusion is amply supported by the remainder of the evidence introduced at the evidentiary hearings.

Paragraph 6 of the Objection implies that there was no evidence that Beryle Johnston opened a bank account for K & J Farming Investments Limited Liability Company. That implication is erroneous. There is abundant evidence that Beryle Johnston opened the account. See Dkt. 373 at 142; Dkt. 374 at 11. Whether he had authority to do so is immaterial to Judge Glazebrook's ultimate conclusion.

The objections raised in paragraphs 7, 8 and 9 miss the point. The record indeed reflects that Kathleen Johnston made contributions to the K & J account; however, it is clear that those funds were capital contributions, rather than loans. There is absolutely no evidence that Kathleen Johnston, individually or on behalf of K & J, ever made a loan to Fleetwood Farms.

Finally, paragraphs 5 and 10 attack Judge Glazebrook's conclusion that the conveyance at issue was fraudulent. The undersigned judge has read the entire file, including all of the transcripts of the hearings before Magistrate Judge Glazebrook, and finds the Magistrate's conclusion to be well-supported, even compelled, by the evidence. It is clear that the transaction upon which the transfer was based was a complete and utter sham, designed to defeat the interest of the United States in the forfeited property, and there never was a loan made by K & J to Fleetwood Farms.

Based on the foregoing, it is ORDERED as follows:

1. The October 24, 1997 Report and Recommendation (Dkt.369) is APPROVED AND ADOPTED.[1]

2. Kathleen H. Johnston's Objection to Report and Recommendation (Dkt.370), filed November 3, 1997, is OVERRULED.

---

1. One correction is necessary. The first page of the Report and Recommendation states that evidentiary hearings were held on August 23, 1997 and October 26, 1997. In fact, the evidentiary hearings were held on August 22 and October 6, 1997. Additionally, a non-evidentiary hearing was held on August 19, 1997.

3. The United States' Motion to Set Aside as Fraudulent Conveyance of Forfeited Property (Dkt.332), filed May 6, 1997, is GRANTED.

4. The Court hereby sets aside, as fraudulent, the August 6, 1995 transfer (recorded on August 10, 1995) of the 3,000 acre property (identified in the attachment to this Order) from Fleetwood Farms Partnership to K & J Farming Investments Limited Liability Company. The Court finds and declares that the ownership and title to the real property described in the attachment to this Order is in Fleetwood Farms Partnership. The Court further finds and declares that the partnership shares of Fleetwood Farms Partnership are as follows: 25% United States, 25% Kathleen Johnston, and 50% M & B Custom Farming Corporation.

## ATTACHMENT

### PARCEL I.

Lots 4, 5, and 6 in Section 15; Lots 1, 2, 3, 7, 8 and 9 in Section 22; the South 16 acres of Lot 1 and all of Lots 2 and 3, and the S½ SW ¼ of Section 16; and Lots 1, 2 and 9 in Section 21; all of said described real estate being in Township 27 North, Range 9 East of the 6th P.M., together with all accretions thereto, including accretions to Lots 5 and 6 in said Section 22, subject to highways and to easements of record, if any; and subject also to reservation by Dartmouth College of one-half of all oil, gas and minerals.

The real estate herein conveyed (excepting the S½ SW ¼ of Section 16, Township 27 North, Range 9 East of the 6th P.M.) includes all lands lying within the boundaries of the following metes and bounds description, to-wit: Commencing at the Northwest corner of Lot 5, Section 15, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, thence due east along the North line of said Lot 5 and the center lien of said Section 15, extended, to the right bank of the Missouri River, thence Southeasterly along the right bank of the Missouri River to its intersection with the south line of Section 22, Township 27 North, Range 9 East of the 6th P.M., said County and State, extended; thence due west along the south line of said Section 22, extended to the Southwest corner of said Lot 7, in said Section 22, Township 27 North, Range 9 East of the 6th P.M., thence due north along the west line of said Lot 7, in said Section 22, a distance of 1745 feet; thence south 80° west, a distance of 2615 feet to the west line of Lot 5, Section 22, Township 27 North, Range 9 East of the 6th P.M., in said County and State; thence due north along the west line of said Lot 5, said Section 22, extended, 990 feet; thence south 82° west for a distance of 3902 feet; thence north 65° west for a distance of 1300 feet; thence north 3° east, for a distance of 1865 feet; thence due east for a distance of 1052 feet; thence due north for a distance of 1220 feet; to the government meander corner on the north line of Section 21, Township 27 North, Range 9 East of the 6th P.M. in said county and state; thence North along the west line of Lot 2, Section 16, Township 27 North, Range 9 East of the 6th P.M. in said County and State to the northwest corner of said Lot 2 in said Section 16; thence east along the north line of Lot 2 extended, in Section 16, Township 27 North, Range 9 East of the 6th P.M. in said county and state, to the southwest corner of Lot 5 in Section 15, Township 27 North, Range 9 East of the 6th P.M., in said county and state, thence north along the west line of said Lot 5, Section 15, Township 27 North, Range 9 East of the 6th P.M. in said county and state to the place of beginning.

### PARCEL II.

That portion of Lot 8, Section 21 and Lot 4, Section 22, all in Township 27 North, Range 9 East of the 6th P.M., more particularly described as follows: Beginning at the Southeast corner of Section 22, Township 27 North, Range 9, thence South 88°53'40" West, 1293.30 feet, thence North 02°14'30" West, 1732.06 feet, thence South 83°29'20" West, 1214.77 feet; thence South 79°58' West, 1394.0 feet to the point of beginning; thence North 01°52'30" West, 991.31 feet, thence South 81°58'30" West, 2213.43 feet, thence South 5°50' East 840.0 feet, thence North 79°16' East 530 .9 feet; thence North 88°13' East 241.55 feet, thence North 85°15' East, 296.00 feet; thence South 83°46' East 242.65 feet, thence North 86°33' East 841.0 feet to the point of beginning, containing 45.16 acres, more or less.

### PARCEL III.

Part of the NE¼ of Section 27, and that portion of the N ½ of Section 26, all in Township 27 North, Range 9 East of the 6th P.M. more particularly described as follows: Beginning at the Northeast corner of Section 27, Township 27 North, Range 9, thence South 88°53' West, 828.6 feet, thence South 45°50' East, 2523.45 feet to a point 970.46 feet East of the West line of said Section 26 (approximately) and 53 rods North of a line extending from East to West through the center of said Section 26, thence North 89°29'30" East to the center of the stabilized channel of the Missouri River, thence Northwesterly along the center of the stabilized channel of the Missouri River to the section line between Sections 23 and 26, thence due West along the section line to the Northwest corner of Section 26 (Northeast corner of Section 27), to the point of beginning. EXCEPT that part conveyed to the County of Dakota, State of Nebraska, in a deed recorded in Book 69, Page 97 of the records of Dakota County, Nebraska; and EXCEPT that part of said land, if any, lying East of the right bank of the stabilized channel of the Missouri River; and subject to highways, roads, easements of record, reservations by Dartmouth College of one-half of all oil, gas and minerals in deed recorded in Deed Book 73, Page 17 of the records of Dakota County, Nebraska.

PARCEL IV.

A tract of land located in Dakota County, Nebraska; and Woodbury County, Iowa, described as follows: Commencing at the South Quarter corner of Section 8, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, thence Northerly on a bearing of North 0°09' W along the North–South Half Section line of said Section 8 to a point on said line 114.8 feet North of said South Quarter corner, thence Easterly on a bearing of N 89°43'30" E 20 feet to the point of beginning; thence Northerly along existing fence at a bearing of North 0°36' W 1345.51 feet, thence Easterly 12,192.41 feet on a bearing N 89°49'45" E to a point of the intersection of said line with the Nebraska–Iowa boundary as set by the 1943 Compact, thence Southerly along said Compact boundary line on a bearing of S 20°13' E 233.65 feet, thence S 15°2' E 472.0 feet, thence S

11°2' E 471.10 feet, thence S 5°35' E 469.50 feet, thence S 1°4' E, 474.70 feet, thence S 2°42' W 482.30 feet, thence S 4°43' W 185.60 feet, thence S 6°44' W 290.60 feet, thence S 8°26' W 493.70 feet, thence S 8°48' W 504.60 feet, thence S 6°57' W 275.80 feet to the point of intersection of said boundary and the East–West Half Section line of Section 17, 16 and 15, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, extended, thence N 90° W along said East–West Half Section line extended 2270.62 feet to the center of Omaha Creek, thence Northerly along the center line of said Creek as follows: N 17°21'E 521.74 feet, thence N 19°17' E 354.72 feet, thence N 24°2' W 277.14 feet, thence N 40°36' W 534.98 feet, thence N 59°40' W 572.49 feet, thence N 45°4' W 304.19 feet, thence N 45°5' W 420.08 feet, thence N 25°42' E 322.41 feet, thence N 35°36' W 177.63 feet, thence N 83°17' W 227.69 feet, thence S 83°57' W 612.89 feet, thence S 70°21'30" W 316.26 feet, thence N 88°37'30" W 588.0 feet, thence N 75°54' W 1044.49 feet, thence N 68°44' W 241.90 feet to the point of the intersection of the center line of Omaha Creek as it presently exists with the extended fence line as it presently exists, thence S 89°43'30" W 5884.92 feet to the point of beginning, all in Dakota County, Nebraska, together with all accretion lands adjoining thereto; EXCEPT the following: Commencing at the South Quarter corner of Section 8, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, thence Northerly on a bearing of N 0°09' W along the North–South Half Section line of said Section 8 to a point on said line 114.8 feet North of said South Quarter corner, thence Easterly on a bearing of N 89°43'30" E 20 feet to the point of beginning. Thence N 0°36' W along existing fence line 1345.51 feet, thence N 89°49'45" E 3064.18 feet to the center line of Omaha Creek, thence Southerly and Easterly along the center line of Omaha Creek as follows: S 17°41'30" E 125.49 feet, thence N 88°13'30" E 82.97 feet, thence N 58°32'30" E 204.09 feet, thence N 86°3'30" E 196.92 feet, thence S 19°25'30" E 150.86 feet, thence S 9°53'30" W 225.05 feet, thence S 50°12'30" E 84.89 feet, thence N 88°19' E 323.47 feet, thence S 56°24'30" E 339.95 feet, thence S 65°39'30" E 237.27 feet, thence S

44°45′30″ E 216.60 feet, thence S 36°33′30″ E 203.0 feet, thence S 65°13′30″ E 88.54 feet, thence N 66°10′30″ E 269.27 feet, thence S 62°10′ E 189.88 feet, thence S 31°28′ E 252.71 feet, thence S 52°35′30″ E 50.99 feet, thence N 86°37′ E 230.56 feet, thence S 82°6′ E 151.0 feet, thence S 68°44′ E 132.08 feet to the intersection of the center line of Omaha Creek and the extended fence line as it now exists, thence westerly along said extended fence line on a bearing of S 89°43′30″ W 5884.92 feet to the point of beginning, all in Dakota County, Nebraska.

It is the intent of the foregoing description to cover lands located in Dakota County, Nebraska, and Woodbury County, Iowa, bounded on the East by the center of the main channel of the Missouri River, bounded on the West by the center line of Omaha Creek as established by survey of Joseph P. Neary, Registered Surveyor, dated December 6, 1968, and filed for record in the office of the County Clerk of Dakota County, Nebraska, in Surveyors' Records Book 4B, Page 8, on December 6, 1968, bounded on the South by the center line of Section 15, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, extended from and through said West boundary line to said East boundary line, and bounded on the North by a line described as follows: Commencing at the South Quarter corner of Section 8, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, thence Northerly on a bearing of N 0°09′ along the North–South Half Section line of said Section 8 to a point on said line 114.8 feet North of said South Quarter corner, thence Easterly on a bearing of N 89°43′30″ E 20 feet, thence North on a bearing of N 0°36′ W 1345.51 feet to the point of beginning of said line, said line running Easterly from said point of beginning on a bearing of N 89°49′45″ E to its intersection with the center line of the main channel of the Missouri River.

PARCEL V.

The SE¼ and NE¼ SW¼ of Section 3; and N ½ NE¼ of Section 10; all in Township 27 North, Range 8 East of the 6th P.M., Dakota County, Nebraska.

PARCEL VI.

The SE¼ NE¼ of Section 19; the E½ SE ¼ of Section 18; that part of the W½ SW¼ lying South of the old Omaha Creek channel in Section 17; that part of the NW¼ NW¼ South of the county road in Section 20; and the NE¼ NE¼ of Section 19, except the South 10 acres thereof, all in Township 27 North, Range 9 East of the 6th P.M., in Dakota County, Nebraska.

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

This cause came on for evidentiary hearing on August 23, 1997 and October 26, 1997 [*See* Docket Nos. 318, 335, 345, 361 – 66] on the following motion:

### I. *INTRODUCTION*

On August 5, 1993, the grand jury returned an indictment against, *inter alia*, Beryle Johnston for violation of 18 U.S.C. § 1956(a)(3)(B) and (g). Docket No. 29. The indictment charged two counts of money laundering arising out of actions beginning in June 1993 and terminating July 7, 1993. Docket No. I at 2. Beryle Johnston's trial began on December 1, 1993 and concluded on December 7, 1993. *See* Docket Nos. 126, 129, 130, 133, 135. On December 7, 1993, the jury found Beryl Johnston guilty on both counts, and returned a special verdict of forfeiture of Beryle Johnston's partnership interest in Fleetwood Farms Partnership, including his right, title and interest in any property owned by Fleetwood Farms. *See* Docket Nos. 140, 144. On May 7, 1996, the United States Court of Appeals for the Eleventh Circuit affirmed Johnston's conviction. *See* Docket No. 281.

On motion of the United States, the Honorable Anne C. Conway issued a preliminary order of forfeiture [Docket No. 157], followed by an amended preliminary order of forfeiture on February 14, 1994 providing:

all right, title and interest of defendant, Beryle Johnston, in Fleetwood Farms Partnership, a Nebraska General Partnership in the general business of farming, ... and any an all right, title and interest of defendant Beryle Johnston in real property, with all appurtenances thereto, locat-

ed in Dakota County, Nebraska, and Woodbury County, Iowa, title in the name of Fleetwood Farms, a Nebraska General Partnership, ... is hereby forfeited to the United States.

Docket No. 169 at 1 – 2. At a hearing on March 11, 1997, no party claimed to hold title superior to that of the United States in Beryle Johnston's 25% interest in the Fleetwood Farms partnership. *See* Docket No. 318 at 4. The United States did not seek forfeiture of the 25% interest of Kathleen Johnston, Beryle Johnston's wife, in Fleetwood Farms. The undersigned therefore recommended [Docket No. 318] that the district court enter a final order of forfeiture of:

all right, title and interest of defendant, Beryle Johnston, in Fleetwood Farms Partnership, a Nebraska General Partnership in the general business of farming, whose principal place of business is at 1308 Gold Coast Road, Papillion, Sarpy County, Nebraska.

Docket No. 318 at 6. Judge Conway adopted the report and recommendation [Docket No. 318] by order dated August 1, 1997, thereby forfeiting Beryle Johnston's 25% interest. Docket No. 348. The August 1 order serves as a final order declaring the 25% interest forfeited, although the order is subject to later amendment.[1]

But the Fleetwood Farms Partnership no longer has any assets. The United States claims that Beryle and Kathleen Johnston sought to defeat the government's impending forfeiture by using a sham transaction to transfer Fleetwood Farms' primary asset—a 3,000 acre farm in Dakota County, Nebraska—to another entity in which the government sought no interest. Docket No. 332. The entity that received record title to the 3,000 acre farm was K & J Farming Investment Limited Liability Company, a partnership owned 50% by Kathleen Johnston and 50% by the Kirkholm family. The transfer of the 3,000 acres from Fleetwood Farms to K & J—if legitimate—would increase Kathleen Johnston's partnership interest in the 3,000 acres from 25% to 50%, and decrease

the government's partnership interest in the land from 25% to 0%. The United States and the Kirkholm family agree that this Court should set aside the transfer of the 3,000 acres as fraudulent, and return the 3,000 acres to Fleetwood Farms. Docket No. 332. Only Kathleen Johnston disagrees. Docket No. 345.

## II. *THE LAW*

The United States Congress has enacted legislation vesting in the United States all right, title, and interest in property subject to criminal forfeiture upon the commission of an act of money laundering. 21 U.S.C. § 853(c). Following the entry of an order declaring the property forfeited, the district court may *take any action to protect the interest of the United States in the property ordered forfeited.* 21 U.S.C. § 853(g). Congress has conferred jurisdiction on the district courts to enter such orders without regard to the location of the forfeited property. 21 U.S.C. § 853(*l*).

## III. *FINDINGS OF FACT*

### A. *The Individuals and Entities*

Fleetwood Farms Partnership is a Nebraska General Partnership [hereinafter "Fleetwood Farms"], which is subject to the provisions of Nebraska's Uniform Partnership Act, Nebraska Code Section 67–301, *et seq.* Fleetwood Farms commenced operation on May 27, 1986, pursuant to a partnership agreement. By June 1993, via several transfers of partnership interest, the partners in Fleetwood Farms were Beryle Johnston 25%, his wife Kathleen Johnston 25%, and M & B Custom Farming Corporation, Inc. 50%. Kathleen Johnston is a resident of Nebraska.

The Kirkholm family owns M & B Custom Farming Corporation, Inc. Nancy Kirkholm[2] and Sheila Kirkholm are residents of the State of Nebraska. Margaret Kirkholm is a resident of the State of Iowa. Nancy Kirkholm, Sheila Kirkholm and Margaret Kirkholm are each one sixth owners (50%

---

1. Upon entry of an order of forfeiture, the district court authorizes the Attorney General to seize all property ordered forfeited upon such terms and conditions as the Court deems proper. 21 U.S.C. § 853(g). The forfeited property in this case is Beryle Johnston's 25% interest in Fleetwood Farms partnership.

2. Nancy Kirkholm, and her husband Dennis E. Kirkholm, testified credibly at the hearing.

combined) of K & J Farming Investments Limited Liability Company, a Nebraska Limited Liability Company [hereinafter "K & J"]. Kathleen Johnston owns 50% of K & J.

Dennis E. Martin ["Martin"] is a resident of Nebraska, and an attorney licensed to practice law in the State of Nebraska, whose address is 1040 Regency Circle, Suite 320, Omaha, Nebraska 68128. Martin was the Trustee under a Deed of Trust dated February 25, 1994 between Fleetwood Farms, Trustor, whose address was listed on the Deed of Trust as 1308 Gold Coast Road, Papillion, Nebraska 68128 and K & J, Lender/Beneficiary, whose address was listed on the Deed of Trust as 801 Western Hills, Papillion, Nebraska 68128.

The primary asset of Fleetwood Farms at all relevant times has been approximately 3,000 acres of real estate titled in the name of the Fleetwood Farms Partnership, and located in Dakota County, Nebraska. The deed was recorded May 20, 1987 in Dakota County, Nebraska in Book 102, page 546–48. Even before the district court entered its preliminary order of forfeiture on January 13, 1994, the partners in Fleetwood Farms were 50% M & B Custom Farming Corporation and 25% Kathleen Johnston. By virtue of 21 U.S.C. § 853(c), Beryle Johnston's 25% interest already had vested in the United States at the time of his criminal acts between June 1, 1993 and July 7, 1993.

### B. *The Fraudulent Transfer*

Three months after Beryle Johnston's jury verdict of conviction and special verdict of forfeiture on December 7, 1993, *see* Docket Nos. 140, 144, and two weeks after the district court's amended preliminary order of forfeiture on February 14, 1994, Docket No. 169, the fraudulent transfer began. Kathleen Johnston, signing as a 25% partner in Fleetwood Farms, and Craig Kirkholm, signing on behalf of M & B Custom Farming Corporation (a 50% partner in Fleetwood

Farms) executed on February 25, 1994 an Acknowledgment of Power of Sale to K & J. Dennis Kirkholm, Craig Kirkholm and Nancy Kirkholm believed that signing the document would help to protect $64,000 of the 1993 Fleetwood Farms crop proceeds from government forfeiture.[3] The Acknowledgment of Power of Sale stated, among other things, that Fleetwood Farms is or will be the borrower under a loan from K & J Farming Investments Limited Liability Company in the original principal sum of $500,000. The document pledged the Deed of Trust as security for the purported loan.

On the same day, February 25, 1994, Kathleen Johnston, signing as a 25% partner in Fleetwood Farms, and Craig Kirkholm, signing on behalf of M & B Custom Farming Corporation (a 50% partner in Fleetwood Farms) executed a Deed of Trust between Fleetwood Farms and Dennis E. Martin, Trustee. The Deed of Trust states that it was "FOR THE PURPOSE OF SECURING (a) Due, prompt and complete observance, performance and discharge of each and every obligation, covenant and agreement contained in the Promissory Note." Also on February 25, 1994, a promissory note also was executed. Nevertheless, K & J never advanced any funds to Fleetwood Farms pursuant to the promissory note or otherwise.

Next, Martin wrote a letter on March 31, 1995, purporting to inform Fleetwood Farms' partners that Fleetwood had defaulted on the alleged loan in the amount of $181,708.32, plus accrued interest of $7,342.30. The record shows no credible evidence of any advances of money to support the alleged loan to Fleetwood Farms. On April 18, 1995, Martin filed a Notice of Default under the Deed of Trust, and recorded it in Dakota County, Nebraska. Martin filed a Trustee's Deed to K & J, recorded in Dakota County, Nebraska, on August 10, 1995, pursuant to a public auction on August 1, 1995. Martin, Sackett, and the Kirkholms attended the auc-

---

**3.** Robert Wilson Sackett, tax counsel for the Kirkholms, testified that in late January or early February 1994, when Martin first proposed K & J, he and the Kirkholms were interested because K & J might either protect or at least not hurt the Kirkholm's own interests. In addition to shielding assets, K & J might help to reroute the farm's

funding source in light of bank concerns over Beryle Johnston's criminal indictment. Sackett and the Kirkholms later became concerned, however, when demand was made for payment on March 31, 1995 [Gov't Exh. 6] and on learning of the notice of default on April 17, 1995 [Gov't Exh. 7].

tion. The deed indicates that K & J was the highest bidder at the sale for the amount of $100,000. The deed indicates that the amount was paid in cash by crediting part of the alleged outstanding indebtedness due to K & J. On August 6, 1995, Martin then caused the transfer of the 3,000 acres of real property from Fleetwood Farms to K & J by Trustee's Deed. In a restaurant after the Trustee's sale, Martin told Robert Wilson Sackett that "we cut off the government."

The entire transaction—the alleged loan, the sale, and the transfer of title—was part of a fictitious, sham, and fraudulent transaction intended to defraud the United States out of the value of its 25% interest in the Fleetwood Partnership. Additionally, the transfer of the real property of Fleetwood Farms to K & J was without the consent of the United States in violation of the Fleetwood Farms Partnership Agreement, paragraphs 12(a) and (c), and is not binding.

### C. No Loan

At the hearing, Robert Wilson Sackett, an Iowa attorney, testified that he had investigated the circumstances surrounding the execution of the Promissory Note and the Deed of Trust. He could find no evidence of any money ever being loaned by K & J to Fleetwood Farms. In addition, Larry Harden, a forensic accountant testified credibly that he had fully investigated the facts surrounding the execution of the Promissory Note and Deed of Trust. Harden found no record of any money ever being loaned by K & J to Fleetwood Farms. He reviewed all accounting records, checking account records and tax returns of K & J and Fleetwood Farms in his investigation.

K & J's bank account was opened at First National Bank in Wisner, Nebraska, by Beryle Johnston on February 25, 1994, with money from Fleetwood Farms in three checks totaling $64,923.68. The checks represented equal capital contributions, 50% by Kathleen Johnston, 50% by the Kirkholms. The later contributions and payments into the K & J account were substantially equal, and were not a loan. K & J never loaned money or actually gave any valuable consideration to Fleetwood Farms in return for the Promissory Note and Deed of Trust from Fleetwood Farms to K & J dated February

25, 1994. Although the record demonstrates that the only bank account that Nancy Kirkholm used to deposit Fleetwood Farms revenues and to pay Fleetwood Farms expenses was a K & J account, K & J neither loaned nor advanced money to Fleetwood Farms. K & J did not deposit any money into the K & J account. It was all Fleetwood Farms' money. All capital contributions into the K & J bank account were made equally by Kathleen Johnston and the Kirkholm family.

### D. Corrective Action

The following is necessary to protect the interest of the United States in the Fleetwood Farms Partnership. The Court finds and declares that the partnership shares of Fleetwood Farms Partnership are as follows: 25% the United States, 25% Kathleen Johnston, 50% the Kirkholm family interests. Pursuant to 21 U.S.C. § 853(g) and (l), the Court finds and declares the ownership and title to the following described real property located in Dakota County, Nebraska is in Fleetwood Farms Partnership:

PARCEL I.

Lots 4, 5, and 6 in Section 15; Lots 1, 2, 3, 7, 8 and 9 in Section 22; the South 16 acres of Lot 1 and all of Lots 2 and 3, and the S½ SW ¼ of Section 16; and Lots 1, 2 and 9 in Section 21; all of said described real estate being in Township 27 North, Range 9 East of the 6th P.M., together with all accretions thereto, including accretions to Lots 5 and 6 in said Section 22, subject to highways and to easements of record, if any; and subject also to reservation by Dartmouth College of one-half of all oil, gas and minerals.

The real estate herein conveyed (excepting the S½ SW¼ of Section 16, Township 27 North, Range 9 East of the 6th P.M.) includes all lands lying within the boundaries of the following metes and bounds description, to-wit: Commencing at the Northwest corner of Lot 5, Section 15, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, thence due east along the North line of said Lot 5 and the center lien of said Section 15, extended, to the right bank of the Missouri River; thence Southeasterly along the right bank of the Missouri River to its intersection with the south line of Section

22, Township 27 North, Range 9 East of the 6th P.M., said County and State, extended; thence due west along the south line of said Section 22, extended to the Southwest corner of said Lot 7, in said Section 22, Township 27 North, Range 9 East of the 6th P.M., thence due north along the west line of said Lot 7, in said Section 22, a distance of 1745 feet; thence south 80° west, a distance of 2615 feet to the west line of Lot 5, Section 22, Township 27 North, Range 9 East of the 6th P.M., in said County and State; thence due north along the west line of said Lot 5, said Section 22, extended, 990 feet; thence south 82° west for a distance of 3902 feet; thence north 65° west for a distance of 1300 feet; thence north 3° east, for a distance of 1865 feet; thence due east for a distance of 1052 feet; thence due north for a distance of 1220 feet; to the government meander corner on the north line of Section 21, Township 27 North, Range 9 East of the 6th P.M. in said county and state; thence North along the west line of Lot 2, Section 16, Township 27 North, Range 9 East of the 6th P.M. in said County and State to the northwest corner of said Lot 2 in said Section 16; thence east along the north line of Lot 2 extended, in Section 16, Township 27 North, Range 9 East of the 6th P.M. in said county and state, to the southwest corner of Lot 5 in Section 15, Township 27 North, Range 9 East of the 6th P.M., in said county and state, thence north along the west line of said Lot 5, Section 15, Township 27 North, Range 9 East of the 6th P.M. in said county and state to the place of beginning.

PARCEL II.

That portion of Lot 8, Section 21 and Lot 4, Section 22, all in Township 27 North, Range 9 East of the 6th P.M., more particularly described as follows: Beginning at the Southeast corner of Section 22, Township 27 North, Range 9, thence South 88°53'40" West, 1293.30 feet, thence North 02°14'30" West, 1732.06 feet, thence South 83°29'20" West, 1214.77 feet; thence South 79°58' West, 1394.0 feet to the point of beginning; thence North 01°52'30" West, 991.31 feet, thence South 81°58'30" West, 2213.43 feet, thence South 5°50' East 840.0 feet, thence North 79°16' East 530 .9 feet; thence North 88°13' East 241.55 feet, thence North 85°15' East, 296.00 feet; thence South 83°46' East 242.65 feet, thence North 86°33' East 841.0

feet to the point of beginning, containing 45.16 acres, more or less.

PARCEL III.

Part of the NE¼ of Section 27, and that portion of the N½ of Section 26, all in Township 27 North, Range 9 East of the 6th P.M. more particularly described as follows: Beginning at the Northeast corner of Section 27,. Township 27 North, Range 9, thence South 88°53' West, 828.6 feet, thence South 45°50' East, 2523.45 feet to a point 970.46 feet East of the West line of said Section 26 (approximately) and 53 rods North of a line extending from East to West through the center of said Section 26, thence North 89°29'30" East to the center of the. stabilized channel of the Missouri River, thence Northwesterly along the center of the stabilized channel of the Missouri River to the section line between Sections 23 and 26, thence due West along the section line to the Northwest corner of Section 26 (Northeast corner of Section 27), to the point of beginning. EXCEPT that part conveyed to the County of Dakota, State of Nebraska, in a deed recorded in Book 69, Page 97 of the records of Dakota County, Nebraska; and EXCEPT that part of said land, if any, lying East of the right bank of the stabilized channel of the Missouri River; and subject to highways, roads, easements of record, reservations by Dartmouth College of one-half of all oil, gas and minerals in deed recorded in Deed Book 73, Page 17 of the records of Dakota County, Nebraska.

PARCEL IV.

A tract of land located in Dakota County, Nebraska; and Woodbury County, Iowa, described as follows: Commencing at the South Quarter corner of Section 8, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, thence Northerly on a bearing of North 0°09' W along the North–South Half Section line of said Section 8 to a point on said line 114.8 feet North of said South Quarter corner, thence Easterly on a bearing of N 89°43'30" E 20 feet to the point of beginning; thence Northerly along existing fence at a bearing of North 0°36' W 1345.51 feet, thence Easterly 12,192.41 feet on a bearing N 89°49'45" E to a point of the intersection of said line with the Nebraska–

Iowa boundary as set by the 1943 Compact, thence Southerly along said Compact boundary line on a bearing of S 20°13′ E 233.65 feet, thence S 15°2′ E 472.0 feet, thence S 11°02′ E 471.10 feet, thence S 5°35′ E 469.50 feet, thence S 1°4′ E, 474.70 feet, thence S 2°42′ W 482.30 feet, thence S 4°43′ W 185.60 feet, thence S 6°44′ W 290.60 feet, thence S 8°26′ W 493.70 feet, thence S 8°48′ W 504.60 feet, thence S 6°57′ W 275.80 feet to the point of intersection of said boundary and the East–West Half Section line of Section 17, 16 and 15, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, extended, thence N 90° W along said East–West Half Section line extended 2270.62 feet to the center of Omaha Creek, thence Northerly along the center line of said Creek as follows: N 17°21′ E 521.74 feet, thence N 19°17′ E 354.72 feet, thence N 24°2′ W 277.14 feet, thence N 40°36′ W 534.98 feet, thence N 59°40′ W 572.49 feet, thence N 45°4′W 304.19 feet, thence N 45°5′ W 420.08 feet, thence N 25°42′ E 322.41 feet, thence N 35°36′ W 177.63 feet, thence N 83°17′ W 227.69 feet, thence S 83°57′ W 612.89 feet, thence S 70°21′30″ W 316.26 feet, thence N 88°37′30″ W 588.0 feet, thence N 75°54′ W 1044.49 feet, thence N 68°44′ W 241.90 feet to the point of the intersection of the center line of Omaha Creek as it presently exists with the extended fence line as it presently exists, thence S 89°43′30″ W 5884.92 feet to the point of beginning, all in Dakota County, Nebraska, together with all accretion lands adjoining thereto; EXCEPT the following: Commencing at the South Quarter corner of Section 8, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, thence Northerly on a bearing of N 0°09′ W along the North–South Half Section line of said Section 8 to a point on said line 114.8 feet North of said South Quarter corner, thence Easterly on a bearing of N 89°43′30″ E 20 feet to the point of beginning. Thence N 0°36′ W along existing fence line 1345.51 feet, thence N 89°49′45″ E 3064.18 feet to the center line of Omaha Creek, thence Southerly and Easterly along the center line of Omaha Creek as follows: S 17°41′30″ E 125.49 feet, thence N 88°13′30″ E 82.97 feet, thence N 58°32′30″ E 204.09 feet, thence N 86°3′30″ E 196.92 feet, thence S 19°25′30″ E 150.86 feet, thence S 9°53′30″ W 225.05 feet, thence S 50°12′30″ E 84.89 feet, thence N 88°19′ E 323.47 feet, thence S 56°24′30″ E 339.95 feet, thence S 65°39′30″ E 237.27 feet, thence S 44°45′30″ E 216.60 feet, thence S 36°33′30″ E 203.0 feet, thence S 65°13′30″ E 88.54 feet, thence N 66°10′30″ E 269.27 feet, thence S 62°10′ E 189.88 feet, thence S 31°28′ E 252.71 feet, thence S 52°5′30″ E 50.99 feet, thence N 86°37′ E 230.56 feet, thence S 82°6′ E 151.0 feet, thence S 68°44′ E 132.08 feet to the intersection of the center line of Omaha Creek and the extended fence line as it now exists, thence westerly along said extended fence line on a bearing of S 89°43′30″ W 5884.92 feet to the point of beginning, all in Dakota County, Nebraska.

It is the intent of the foregoing description to cover lands located in Dakota County, Nebraska, and Woodbury County, Iowa, bounded on the East by the center of the main channel of the Missouri River, bounded on the West by the center line of Omaha Creek as established by survey of Joseph P. Neary, Registered Surveyor, dated December 6, 1968, and filed for record in the office of the County Clerk of Dakota County, Nebraska, in Surveyors' Records Book 4B, Page 8, on December 6, 1968, bounded on the South by the center line of Section 15, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, extended from and through said West boundary line to said East boundary line, and bounded on the North by a line described as follows: Commencing at the South Quarter corner of Section 8, Township 27 North, Range 9 East of the 6th P.M., Dakota County, Nebraska, thence Northerly on a bearing of N 0°09′ W along the North–South Half Section line of said Section 8 to a point on said line 114.8 feet North of said South Quarter corner, thence Easterly on a bearing of N 89$43′30″ E 20 feet, thence North on a bearing of N 0°36′ W 1345.51 feet to the point of beginning of said line, said line running Easterly from said point of beginning on a bearing of N 89$49′45″ E to its intersection with the center line of the main channel of the Missouri River.

PARCEL V.

The SE¼ and NE¼ SW¼ of Section 3; and N ½ NE¼ of Section 10; all in Township 27 North, Range 8 East of the 6th P.M., Dakota County, Nebraska.

PARCEL VI.

The SE¼ NE¼ of Section 19; the E½ SE¼ of Section 18; that part of the W½ SW¼ lying South of the old Omaha Creek channel in Section 17; that part of the NW¼ NW¼ South of the county road in Section 20; and the NE¼ NE¼ of Section 19, except the South 10 acres thereof, all in Township 27 North, Range 9 East of the 6th P.M., in Dakota County, Nebraska.

## IV. *CONCLUSION AND RECOMMENDATION*

For the reasons stated above, the motion of the United States to Set Aside as Fraudulent Conveyance of Forfeited Property or in the Alternative a Determination that K & J Limited Liability Company is the Alter Ego of the Defendant Beryle Johnston [Docket No. 332] should be **GRANTED.** The district court should set aside as fraudulent the transfer of the 3,000 acre real property from Fleetwood Farms Partnership to K & J, and find and declare that Fleetwood Farms Partnership owns the real property. Such an order is necessary to protect the interest of the United States in the property ordered forfeited, i.e. the government's 25% interest in the Fleetwood Farms Partnership, within the meaning of 21 U.S.C. § 853(g).

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within eleven days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** this 23rd day of October, 1997.